UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| ROBERT C. MILLER and | ) | |
| GWENDOLYN S. MILLER, | ) | No. 13 B 2178 |
| | ) | |
| Debtors. | ) | Judge Goldgar |

### MEMORANDUM OPINION

Before the court for ruling is the motion of chapter 13 trustee Marilyn O. Marshall to dismiss the case of debtors Robert C. Miller and Gwendolyn S. Miller. The trustee contends the Millers are ineligible to be chapter 13 debtors because their unsecured debt exceeds the limit in section 109(e) of the Bankruptcy Code, 11 U.S.C. § 109(e).

The trustee's motion raises the question of how to calculate the debt limits in a joint case. The Millers argue that their debts should be calculated individually, and debts only one of them owes should not be included in the debts of the other. As long as the Millers are each eligible to file an individual case, they say, they are eligible to file a joint case. The trustee disagrees, arguing that all debts of the Millers, owed individually or not, must be combined for purposes of section 109(e).

For the reasons that follow, the trustee is correct. Her motion will be granted and the case dismissed – unless the Millers convert their case to one under chapter 11.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). A motion to dismiss a bankruptcy

case based on the debtor's asserted ineligibility is a core proceeding. *In re Hedquist*, 342 B.R. 295, 298-99 (B.A.P. 8th Cir. 2006).

## 2. Facts

The facts are taken from the parties' papers and from the schedules the Millers filed in their case.[1] No facts are in dispute.

The Millers filed their joint chapter 13 petition on January 21, 2013. Their schedules were filed the same day. Schedule D lists total secured debt of $408,300, most of it joint. More important, Schedules E and F disclose priority and general unsecured debt of $356,205. Adding to that unsecured debt the $86,600 unsecured portions of the secured claims on Schedule D, and treating as unsecured the $38,300 second mortgage on their home (since no collateral value supports the mortgage), the Millers' total unsecured debt comes to $481,105.

Of this total unsecured debt, however, only $178,800 is joint.[2] The rest is unsecured debt belonging to Robert Miller or Gwendolyn Miller individually. On Schedule D, a $350 unsecured portion of a secured claim is attributable to Gwendolyn alone, and a $950 unsecured portion of a secured claim is attributable to Robert alone. On Schedule F, the general unsecured debt

---

[1] The court can take judicial notice of the Millers' schedules. *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002). Considering the schedules is not only appropriate but critical here, because a debtor's debts for purposes of section 109(e) depend on the debts he lists in his schedules; other evidence is considered only to ensure that the schedules were prepared in good faith. *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985); *In re Hansen*, 316 B.R. 505, 508 (Bankr. N.D. Ill. 2004); *see, e.g., In re Bernick*, 440 B.R. 449, 450 (Bankr. E.D. Va. 2010) (taking judicial notice of debtor's schedules for purposes of deciding eligibility).

[2] The joint debt consists of the $38,300 wholly unsecured second mortgage, $85,300 of the unsecured portions of secured claims on Schedule D, the $40,300 priority unsecured debt on Schedule E, and $14,900 of the general unsecured debt on Schedule F.

attributable solely to Robert comes to $161,555, and the general unsecured debt attributable solely to Gwendolyn comes to $139,100.[3]

Taking all of these figures into account, Robert's total unsecured debt, owed individually or jointly, is $341,305.[4] Gwendolyn's total unsecured debt, owed individually or jointly, is $318,250.[5]

On March 12, 2013, the trustee moved to dismiss the Millers' case. The trustee contends in the motion that the Millers' combined $481,105 in unsecured debt exceeds the limit of $360,475 in section 109(e), making them ineligible to be chapter 13 debtors. In response, the Millers concede that their combined unsecured debt exceeds the limit but point out that their separate unsecured debt does not. Because section 109(e) would have allowed them to file separate individual cases, the Millers argue, they should be eligible to file a joint case, as well. In support, the Millers cite *In re Werts*, 410 B.R. 677 (Bankr. D. Kan. 2009), among other decisions.

### 3. Discussion

The trustee has the better of the argument. Under section 109(e), the Millers are plainly ineligible to be debtors in a chapter 13 case. They are right that *Werts* and several other decisions

---

[3] This figure does not include a $350 debt shown on Schedule F that the Millers failed to designate as "H" (for husband), "W" (for wife), or "J" (for joint). The $350 debt makes no difference to the outcome here.

[4] $124,550 (joint and individual unsecured portions of secured debt) + $40,300 (joint priority unsecured debt) + $176,455 (joint and individual general unsecured debt) = $341,305.

[5] $123,950 (joint and individual unsecured portions of secured debt) + $40,300 (joint priority unsecured debt) + $154,000 (joint and individual general unsecured debt) = $318,250.

support the their eligibility. Those decisions, however, misread section 109(e).

Relief under chapter 13 of the Bankruptcy Code is available only to people who owe debts under a certain amount. Section 109(e) provides in part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, or an individual with regular income and such individual's spouse . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).[6]

Under this provision, a debtor who files an individual case and debtors who file a joint case are subject to the same debt limits. An "individual" can be a chapter 13 debtor if he "owes" unsecured debts less than $360,475 and secured debts less than $1,081,400. *Id.* An "individual . . . and such individual's spouse" can be debtors if they "owe" unsecured and secured debts less than those same amounts. *Id.* Section 109(e) expressly treats the debts of joint debtors in the "aggregate," *id.*, not as the separate debts of separate debtors separately subject to the debt limits. *See In re Archibald*, 314 B.R. 876, 879 (Bankr. S.D. Ga. 2004); *In re Feltman*, 285 B.R. 82, 86 n.8 (Bankr. D.D.C. 2002); 2 *Collier on Bankruptcy* ¶ 109.06[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012); 2 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on*

---

[6] The debt limits are adjusted every three years. 11 U.S.C. § 104(a). On January 21, 2013, when the Millers filed their petition, the debt limits were $360,475 and $1,081,400. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 75 Fed. Reg. 8747, 8748 (Feb. 25, 2010). The debt limits were adjusted again on February 21, 2013. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 78 Fed. Reg. 12089, 12090 (Feb. 21, 2013). The new debt limits are $383,175 and $1,149,525. *Id.*

-4-

*Bankruptcy* § 15.02[A][3] at 15-11 to 12 (Susan V. Kelly, ed., 2012-3 Supp.); Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th ed., § 11.1 at ¶ 1, sec. rev. Apr. 19, 2011, www.Ch13online.com.

The Millers are not eligible to be chapter 13 debtors because their unsecured debt in the aggregate exceeds the debt limit. The unsecured debt limit, again, is $360,475. The unsecured debt the Millers list in their schedules totals $481,105, making them ineligible.

The Millers argue that their unsecured debt considered on an individual basis is below the limit, and each could have filed an individual case: Robert's unsecured debt is $341,305; Gwendolyn's is $318,250. As a factual matter, the Millers are right, but the point is irrelevant. Section 109(e) is plain on its face and subjects joint debtors to debt limits identical to the debt limits for an individual debtor. There is simply no other way to read what the statutory language says, and the Millers suggest none.

Although the Millers locate no support for their position in the statute itself, they do cite *In re Werts*, 410 B.R. 677 (Bankr. D. Kan. 2009), which reaches the result the Millers urge. *Werts* holds eligible under section 109(e) joint debtors whose aggregate debts exceed the debt limit but whose individual debts do not. *See id.* at 688-89. At least three other decisions have agreed with *Werts*, holding eligible for chapter 13 joint debtors like the Millers. *See In re Hannon*, 455 B.R. 814, 815-16 (Bankr. S.D. Fla. 2011); *In re Scholz*, No. 6:10-bk-08446-ABB, 2011 WL 9517442, at *2 (Bankr. M.D. Fla. Apr. 11, 2011); *In re Bosco*, No. 10-08000-8-JRL, 2010 WL 4668595, at *1 (Bankr. E.D.N.C. Nov. 9, 2010).

The problem with the *Werts* approach is that it rests on policy judgments rather than on an analysis of the statutory language. *Werts* suggests that barring joint debtors who would be

eligible for chapter 13 if considered as individuals would not further "the [congressional] goal of encouraging Chapter 13 filings" rather than filings under chapter 7. *Werts*, 410 B.R. at 688. The decision adds that there is "no reason" why a joint case could not be filed when each debtor separately meets the debt limits and would "be entitled to file his or her own Chapter 13 case." *Id.* To rule out joint cases under these circumstances, *Werts* says, "would elevate form over substance" and would "be no benefit to anyone." *Id.* at 689.

But *Werts* never explains how section 109(e) can be interpreted to permit a joint case even though the aggregate debt limit is exceeded, as long as each debtor would be separately eligible to file an individual case. For that matter, *Werts* never explains why an interpretation of the statute is necessary at all. *Werts* concludes that "a more reasonable reading" of section 109(e) is one that permits joint chapter 13 cases under these circumstances, *id.* at 688, but bases that conclusion entirely on its own view of bankruptcy policy, not on the statutory language.

That is not the proper way to apply statutes. Statutory analysis begins with the language of the statute itself, *In re Chambers*, 348 F.3d 650, 655 (7th Cir. 2003), because the purpose of the analysis is to determine the intent of the legislature, and the statute's language is the best evidence of legislative intent, *Kovacs v. United States*, 614 F.3d 666, 673 (7th Cir. 2010). When a statute is clear, a court's only task is to give effect to its meaning. *United States v. Smith*, 668 F.3d 427, 431 (7th Cir. 2012). Once that is done, "judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (internal quotation omitted). Unless the statute is ambiguous in some way, the occasion for interpreting it – for "reading" it one way or another – never arises.

Courts faced with a clear statutory command may not begin by deciding that some other

way of doing things would be "more reasonable" and then "read" the statute to do them that way. Congress decides what makes for a reasonable bankruptcy system, and the Code embodies its view of sound bankruptcy policy. It is not the place of courts to rewrite the Code, "turning it into something they consider more logical, sensible, or conducive to human progress and enlightenment." *In re Farrar-Johnson*, 353 B.R. 224, 229 (Bankr. N.D. Ill. 2006). It is not the place of courts even to interpret Code provisions to further particular congressional policies (such as a preference for chapter 13 cases over chapter 7) if no interpretation is necessary. Section 109(e) is clear. No interpretation is necessary.[7]

Of the decisions that follow *Werts*, only *Scholz* engages in any sort of statutory analysis.[8] *See Scholz*, 2011 WL 9517442, at *1-2. The analysis, however, begins not with section 109(e) but with sections 302(a) and (b). *Id.* at *1. *Scholz* notes that under section 302(a), a joint case is filed by "'an individual . . . and such individual's spouse,'" *id.* (quoting 11 U.S.C. § 302(a)), and under section 302(b) the bankruptcy court must determine in a joint case "'the extent, if any, to which the debtors' estates shall be consolidated,'" *id.* (quoting 11 U.S.C. § 302(b)). The decision also notes that section 109(e) "recognizes petition filers as individuals" and sets debt limits for "'an individual' 'debtor,'" "nouns [that] are singular, not plural." *Id.* at *2. *Scholz* concludes

---

[7]  If section 109(e) were ambiguous and policy were relevant, a congressional preference for chapter 13 over chapter 7 would not support the result in *Werts*. The alternative for a debtor seeking to reorganize and ineligible for chapter 13 is not chapter 7 but chapter 11. *See, e.g., In re Vicente*, 446 B.R. 26, 27-28 (Bankr. D. Mass. 2011); *In re Rooney*, 436 B.R. 454, 455 (Bankr. N.D. Ohio 2010). There is no apparent congressional preference for chapter 13 over chapter 11.

[8]  *Bosco* cites *Werts* and mentions the policy goal of "encouraging chapter 13 filings" but does not discuss the language of section 109(e). *Bosco*, 2010 WL 4668595, at *1. *Hannon* relies on *Scholz*, describes the statutory analysis in *Scholz*, but engages in no analysis of its own. *Hannon*, 455 B.R. at 815-16.

that it would be "inconsistent with the plain meaning of the language of Sections 302(a), 302(b), and 109(e) to treat joint filers as a consolidated entity, whose debts taken together may not exceed the Section 109(e) ceilings . . . ." *Id.*

Like *Werts*, *Scholz* fails to confront the critical phrase in section 109(e): only "an individual . . . and such individual's spouse . . . that owe" debts that "aggregate" less than the specified amounts are eligible for chapter 13. 11 U.S.C. § 109(e). Like *Werts*, then, *Scholz* fails to explain how this phrase can be read to impose anything other than a single debt limit for joint debtors. Certainly, the words "individual" and "debtor" are singular (although section 102(7) of the Code instructs that "the singular includes the plural," 11 U.S.C. § 102(7)). But there is no getting around that the subject in the relevant part of section 109(e) is plural ("individual . . . and such individual's spouse"), and the amounts these plural debtors may "owe" in the "aggregate" and still file a chapter 13 case are the same as the amounts for an individual debtor. As a grammatical matter, no other meaning is possible.

Sections 302(a) and (b), on which *Scholz* relies, warrant no different conclusion. True, section 302(a) says that a joint case is commenced by "an individual . . . and such individual's spouse," the same phrase that appears in section 109(e). *See* 11 U.S.C. § 302(a). And the inquiry into consolidation that section 302(b) requires does suggest that each debtor in a joint case has a separate bankruptcy estate. *See* 11 U.S.C. § 302(b). But even when the estates of joint chapter 13 debtors are not formally consolidated (which is most of the time), a joint petition is "treated as a single case, and the assets and liabilities are administered as if substantively consolidated." Keith M. Lundin & William H. Brown, *supra*, § 7.1 at ¶ 4; *see e.g. In re Roberts*, 279 F.3d 91, 93 (1st Cir. 2002) (treating joint debtors as an economic unit for purposes of one

spouse's request for hardship discharge although no consolidation order had been entered). A single debt limit for joint debtors is in no way inconsistent with the filing of cases by "individuals" under section 302(a) or the concept of separate estates under section 302(b).

Although the decisions following the *Werts* approach never mention it, the reasoning of those decisions appears to invoke a canon of statutory interpretation known as the "absurd results" doctrine. *See generally* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 46:7 at 253-37 (7th ed. 2007). Under that doctrine, a statute will not be given its literal interpretation if the result would be absurd – this, on the theory that the legislature could not have intended an absurd result. *Id. Werts*, *Scholz*, and the other decisions implicitly find it absurd to impose the same debt limits in joint and individual chapter 13 cases.

There are two problems with applying the "absurd results" doctrine to section 109(e). First, the doctrine is narrow (in the Seventh Circuit, particularly so): its concern is "linguistic rather than substantive." *Jaskolski v. Daniels*, 427 F.3d 456, 462 (7th Cir. 2005). "It deals with texts that don't scan as written and thus need repair work, rather than with statutes that seem poor fits for the task at hand." *Id.*; *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 642 (7th Cir. 2012) (stating that the doctrine permits "modest adjustments to texts that do not parse"); *United States v. Head*, 552 F.3d 640, 643 (7th Cir. 2009). The doctrine is not a license to correct what appear to courts to be bad legislative choices, *Jaskolski*, 427 F.3d at 462, to "make the law 'better,'" *Soppet*, 679 F.3d at 642. A statute that can be applied as written must be. *Id.*; *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 984 (7th Cir. 2008). As discussed above, section 109(e) needs no parsing and can be applied as written; the "absurd results" doctrine therefore supplies no justification for the *Werts* view.

Second, even if the doctrine could be applied to a statute that appears merely to make an unreasonable policy choice, the congressional choice that section 109(e) represents is a reasonable one. Congress considered chapter 13 "simpler, speedier, and less expensive" than chapter 11. *In re Pearson*, 773 F.2d 751, 753 (6th Cir. 1985). The debt limits in section 109(e) thus "function as a gatekeeper," *In re Rios*, 476 B.R. 685, 688 (Bankr. D. Mass. 2012), confining chapter 13 cases to debtors with less debt for whom chapter 11 would be "too cumbersome a procedure," *Hounsom v. United States*, 325 B.R. 319, 327 (M.D. Fla. 2005) (internal quotation omitted); *In re Albano*, 55 B.R. 363, 365 (N.D. Ill. 1985). At the same time, the debt limits direct debtors with more debt to chapter 11, where greater creditor protections – a disclosure statement and a vote on plan confirmation – are available. *In re Brammer*, 431 B.R. 522, 524 (Bankr. D.D.C. 2009).

Since a joint case is treated as one case, the debtors' separate estates notwithstanding, Keith M. Lundin & William H. Brown, *supra*, § 7.1 at ¶ 4, Congress could reasonably have decided to create a single debt limit for all chapter 13 cases, whether individual or joint. Below that limit, any case can be filed under chapter 13; above it, every case must be filed under chapter 11. Indeed, it would have made little sense to compel an individual debtor with $360,476 in unsecured debt (a $1 more than the debt limit in section 109(e)) to file under chapter 11 but allow joint debtors with nearly twice that much debt to proceed under chapter 13.

Because the Millers' unsecured debt exceeds $360,475, they are ineligible to be debtors in a joint chapter 13 case, whatever their eligibility to file individual chapter 13 cases.

### 4. Conclusion

For these reasons, the motion of chapter 13 trustee Marilyn O. Marshall to dismiss the

chapter 13 case of debtors Robert C. Miller and Gwendolyn S. Miller will be granted unless the case is converted to a case under chapter 11. This matter will be continued to another date to give the Millers time to consider conversion. A separate order will be entered consistent with this opinion.

Dated: May 21, 2013

                                              A. Benjamin Goldgar
                                              United States Bankruptcy Judge